# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GINA MILITELLO, now ERIN, Individually and as Administratrix of The Estate of ASHLEY NICOLE CRABTREE, Deceased, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-17-290-HE |
| ICAN LOGISTICS, INC., a Foreign For Profit Corporation; ZEYS WANG, an Individual; and HONGYUE TRUCKING, INC., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |
| and | ) |
| ICAN LOGISTICS, INC., | ) |
| Defendant/<br>Third-Party Plaintiff, | )<br>) |
| vs. | ) |
| WESCO INSURANCE COMPANY, | ) |
| Third-Party Defendant. | ) |

## ORDER

Plaintiff Gina Militello[1] filed this wrongful death action individually and on behalf of her deceased daughter, Ashley Nicole Crabtree, against ICAN Logistics, Inc.

---

[1] *Although the plaintiff is now Ms. Erin, the court will continue to refer to her as Ms. Militello.*

("ICAN"),[2] Zeyu Wang, and Hongyue Trucking, Inc. ("Hongyue"). Her claims arise out of a vehicle accident involving the decedent and defendant Wang. ICAN filed a third-party complaint against Wesco Insurance Company ("Wesco"), who then filed a counterclaim and crossclaims for declaratory judgment against ICAN, Militello, Hongyue and Wang. Wesco and ICAN have filed motions for summary judgment and Ms. Militello has filed a partial motion for summary judgment.[3] In this order the court will address Wesco's and plaintiff's motions.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Considering the motions filed under this standard, the court concludes both Wesco's and plaintiff's motions should be denied.

## Background

Plaintiff's daughter was killed when her vehicle collided with a tractor-trailer driven by Zeyu Wang on March 6, 2016, in Oklahoma City, Oklahoma. In the amended complaint

---

[2] *It is unclear whether the correct spelling of defendant's name is ICAN or ICan. Even defendant has spelled it both ways. Compare Doc. #6 with Doc. #71. The court will use ICAN.*

[3] *Plaintiff improperly moved for summary judgment in her response to third-party defendant Wesco's motion for summary judgment. See LCvR7.1(c).*

("complaint") plaintiff alleges that defendant Hongyue leased a tractor and trailer and provided a driver, Wang, to ICAN. Plaintiff alleges that both ICAN and Hongyue should have known that Wang, who purportedly left California around March 5, 2016, transporting cargo in the tractor-trailer,[4] was not qualified to operate the vehicle because he could not speak or write English sufficiently to, among other things, understand traffic signs and make legible entries on reports and records. Plaintiff alleges that Wang violated federal motor carrier regulations by failing to take mandatory rest breaks while driving from California. She specifically claims that when the accident occurred Wang had been driving more than eleven hours, been on duty more than fourteen hours and had falsified his record of duty logs. Plaintiff contends that, even though there was a sign on the road where the accident occurred which stated "'Congestion Be Prepared to Stop,' Wang negligently struck the rear of Crabtree's vehicle, fatally injuring her daughter. Doc. #15, p. 4, ¶¶ 28-29.[5] Plaintiff asserts claims for negligence and negligence per se against ICAN, Wang and Hongyue.

ICAN filed a crossclaim against Hongyue, asserting it is entitled to contractual indemnity pursuant to the terms of the lease agreement ("Agreement") they executed and common law indemnity for any liability imposed in this action. ICAN claims that Hongyue breached the Agreement by failing to list it as an additional insured on an insurance policy

---

[4] A bill of lading dated March 6, 2016, shows that Wang was transporting a shipment of goods on behalf of Best Buy.

[5] References to documents are to the CM/ECF document and page number.

3

Hongyue obtained from Westco. ICAN also filed a third-party complaint against Wesco. ICAN alleges that at the time of the accident Wesco insured defendant Hongyue for "any and all of the alleged liability claimed by Plaintiff against Hongyue Trucking, Inc." and that its (ICAN's) agreement with Hongyue required Hongyue to list it as an additional insured on the Wesco insurance policy. Doc. #18, p. 2, ¶¶ 3, 5. ICAN alleges that Wesco "breached its duty and the Lease Agreement by failing to make ICAN an additional insured under its policy." *Id*. at ¶6.

Wesco issued a commercial motor carrier insurance policy ("Policy" or "basic Policy") to Hongyue with effective dates of February 9, 2016 to February 9, 2017. Wesco seeks a declaratory judgment that it has no duty under the Policy to defend and/or indemnity ICAN, Hongyue, Wang or any other party, principally because Hongyue was not acting as a for-hire motor carrier at the time of the accident. In her motion plaintiff asks the court to determine as a matter of law that Hongyue was a "for-hire motor carrier for the trip at issue." Doc. #57, p. 9.

<u>Analysis</u>

It is undisputed that the basic insurance policy Wesco issued to Hongyue does not provide insurance coverage for the accident.[6] The leased tractor and trailer ("tractor") that are the subject of the Agreement between ICAN and Hongyue were not specifically described in the Policy and are not, therefore, "covered autos" under its terms. Because

---

[6] *ICAN's assertion to the contrary in its response brief, based on the existence of the alleged "insured contract" between ICAN and Hongyue, is not persuasive.*

4

they were not "covered autos," ICAN, Hongyue and Wang are not "insureds" under the Policy. However, attached to the basic Policy is a federally mandated MCS-90 endorsement. Plaintiff argues that it applies to provide insurance coverage for the accident.

"Federal regulations require interstate trucking companies to maintain insurance or another form of surety 'conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles.'" Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868, 870 (10th Cir. 2009) (quoting 49 C.F.R. § 387.301(a); *see also id*. § 387.7). Most interstate trucking companies obtain the MCS-90, a specific endorsement to one or more of their insurance policy or policies, "which guarantees payment of minimum amounts, as set forth in the regulations, to an injured member of the public." *Id.* (quoting 49 C.F.R. §§ 387.7, 387.9). "An MCS–90 endorsement is intended to eliminate[] the possibility of a denial of coverage by requiring the insurer to pay any final judgment recovered against the insured for negligence in the operation, maintenance, or use of motor vehicles subject to federal financial responsibility requirements, even though the accident vehicle is not listed in the policy." *Id*. (internal quotation marks omitted).

In Yeates the Tenth Circuit concluded that "the MCS-90 endorsement is intended to impose a surety obligation on the insurance company." *Id*. at 879. It held:

> [W]hen an injured party obtains a negligence judgment against a motor carrier, an insurer's obligation under the MCS–90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent. Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply.

5

*Id.*

Wesco asserts that most of the requirements that must be met for the MCS-90 endorsement to be triggered have not been satisfied here. It contends that a final judgment has not been entered against Hongyue, the named insured, and "the other motor carrier's aggregate coverage is [sufficient] to satisfy the federally mandated minimum levels of financial responsibility." Doc. #49, p. 25.[7] Wesco also argues that, for the endorsement to be triggered, Hongyue must have been "operating as a for-hire motor carrier at the time of the accident." Herrod v. Wilshire Ins. Co., 499 Fed. Appx. 753, 760 (10th Cir. 2012). As explained by the Tenth Circuit in Herrod, the "financial responsibility requirements of the MCA apply to 'motor carriers.'" Herrod, 499 Fed. Appx. at 759 (citing 49 U.S.C. §31139(b)). The MCA defines the term as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "motor carrier" is defined by the regulations promulgated pursuant to the MCA and accompanying the MCS-90 endorsement as a "for-hire motor carrier or a private motor carrier." 49 C.F.R. § 387.5. "[F]or-hire carriage is defined as "the business of transporting, for compensation, the goods or property of another." *Id*. A motor carrier includes "a motor carrier's agent, officer, or representative." 49 C.F.R. § 387.5. Wesco claims ICAN was the for-hire carrier, not Hongyue, when the tractor trailer Wang was driving collided with the decedent's car. It also asserts that the MCS-90 endorsement in Wesco's Policy is not triggered because other

---

[7] *Wesco assert that the policy issued by Arch Insurance Company, a nonparty, to ICAN (the other motor carrier) provides $1,000,000 in coverage, which meets the federally–mandated minimum.*

6

insurance is available to provide the federally mandated minimum coverage. Plaintiff claims Hongyue was a, if not the, for-hire carrier when the accident occurred.

The court agrees with Wesco that the MCS-90 endorsement cannot be triggered unless and until Ms. Militello obtains a negligence judgment against Hongyue. *See* Yeates, 585 F.3d at 879. It does not agree with Wesco, though, that it is relieved of its MCS-90 surety obligation because the federally mandated limits are available through another insured's policy (here ICAN's policy with Arch). Several courts, including the Tenth Circuit in an unpublished opinion, have rejected the position urged by Wesco that "the public liability to be satisfied is per accident, not per carrier." Fairmont Specialty Ins. Co. v. 1039012 Ontario, Inc., 2011 WL 3651333, at *3 (N.D. Ind. Aug. 19, 2011); *see* Herrod, 499 Fed. Appx. at 759-60. The critical issue is whether Hongyue was "transporting the goods of another for compensation at the time of the accident in order to qualify it as a for-hire motor carrier for purposes of triggering [Wesco's] MCS-90 obligation." *Id.* at *5 n.7; *see* 49 C.F.R. § 387.5. Material questions of fact exist which preclude its resolution.

The lease Hongyue and ICAN executed required Hongyue to employ the driver to operate the leased equipment and to pay all expenses associated with operating the tractor trailer during the term of the lease including, but not limited to, fuel, maintenance, and repair costs. Doc. #57-1, p. 1, ¶4. The lease did not include any reference to compensation. Among other thing it did not identify "[t]he amount to be paid by the authorized carrier for

7

equipment and driver's services" as required by 49 C.F.R. 376.12(d).⁸  While, as Wesco points out, ICAN received payment for the shipment of goods that were being transported on the day of the accident, it immediately turned around the next day and paid that <u>entire sum</u> to Hongyue.  *See* <u>Park Ins. Co. v. Lugo</u>, 2015 WL 1535791, at *5 (S.D.N.Y. April 6, 2015) ("Here, the relationship between Sav–On and Eco was much more than that of lessor and lessee. Sav–On maintained close control over Eco's operations of the vehicle.  Sav–On provided cash advances and general financing for any upkeep of the vehicle. Sav–On, and not Eco, received direct payment for the vehicle's transportation services.").  That is sufficient evidence from which a reasonable jury could conclude that Hongyue was operating as a for-hire carrier at the time of the accident. Wesco's motion for summary judgment will therefore be denied.  Plaintiff's motion for partial summary judgment will also be denied because the evidence is disputed as to Hongyue's status on March 6, 2016.

One additional matter needs to be addressed.  In its response to plaintiff's motion for summary judgment, Wesco raises a new argument – that because Hongyue is an insured under the policy Arch provided to ICAN, Hongyue's insurance coverage is sufficient to satisfy the MCA's financial responsibility requirements so the MCA-90 endorsement under its policy with Wesco is not triggered.⁹  Plaintiff contends that, pursuant to the terms of the

---

⁸ *Under the paragraph heading "Compensation," the Agreement states, "Lessor will be compensated for lease of the equipment in the following manner: Lessor shall pay <u>0</u>% of the gross earning of the Equipment each week." Doc. #57-1, p. 1.*

⁹ *The Tenth Circuit and other courts have concluded that the MCS-90 endorsement is not triggered if the motor carrier's insurance coverage is sufficient to meet the federally-mandated minimum levels.  See <u>Yeates</u>, 584 F.3d at 885-86.*

8

Arch policy and the lease agreement between Hongyue and ICAN, the Wesco policy is deemed primary and the Arch policy is considered to provide excess coverage. Plaintiff argues that, because under California law primary insurance must be exhausted before a secondary insurer has exposure, "Hongyue would only have coverage under the Arch policy once its MCS-90 coverage is exhausted." Doc. #63, p. 10. Plaintiff also asserts that Wesco's new position is barred by the "mend the hold" doctrine.

The court will not consider Westco's argument that Hongyue is considered an insured under the Arch policy at this time. That coverage issue has not been sufficiently briefed, plus plaintiff raises serious questions as to whether Westco should be allowed to assert a new position late in the proceedings. Notably Westco did not rely on the argument in support of its motion for summary judgment, but asserted it only in response to plaintiff's motion.

Material questions of fact exist regarding Hongyue's status as a for-hire motor carrier at the time of the accident underlying plaintiff's claims. Accordingly, the amended motion for summary judgment [Doc. #49] filed by third-party defendant Wesco and the motion for partial summary [Doc. #57] filed by plaintiff Militello are **DENIED**.

IT IS SO ORDERED.

Dated this 11th day of April, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE